UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RUTH RODRIGUEZ o/b/o Sergio
Rodriguez (deceased),

    Plaintiff,

v.                                  Case No.:  6:24-cv-134-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

---

## **OPINION AND ORDER**

Ruth Rodriguez seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying the claim of her deceased ex-husband, Sergio Rodriguez, for a period of disability and disability insurance benefits.[1] The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

---

[1] On November 24, 2022, Sergio Rodriguez passed away. (Tr. 416). Ruth Rodriguez appears to be his ex-wife. (Tr. 682). For clarity, the Court will use the term "Plaintiff" to refer to Sergio Rodriguez.

I. **Social Security Act Eligibility, Standard of Review, Procedural History, and the Commissioner's Decision**

A. **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

B. **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the administrative law judge, but must consider the evidence as a whole, taking into account evidence favorable as well as

unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The Commissioner must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the Commissioner must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the Commissioner must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the Commissioner finds the claimant's severe

impairments do not meet or medically equal a listed impairment, then the Commissioner must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the Commissioner must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.     Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on November 21, 2016, alleging disability beginning on April 16, 2008. (Tr. 72, 162-68). The applications were denied initially and on reconsideration. (Tr. 72, 84). Plaintiff requested a hearing, and on June 14, 2019, a hearing was held before Administrative Law Judge M. Hart. (Tr. 30-65). On July 15, 2019, ALJ Hart entered a decision finding Plaintiff was not under a disability from April 16, 2008, the alleged onset date, through December 31, 2009, the date last insured. (Tr. 19-24).

Plaintiff requested review of the decision, but the Appeals Council denied his request on June 3, 2020. (Tr. 1-6). Plaintiff appealed the decision and on January 4, 2022, the District Court reversed the decision and remanded the action for further proceedings. (Tr. 488-501).

On remand, Administrative Law Judge Kelley Fitzgerald ("ALJ") held a second hearing on February 17, 2023. (Tr. 435-54). On September 28, 2023, the ALJ entered a decision finding Plaintiff was not under a disability from April 16, 2008, the alleged onset date, through December 31, 2009, the date last insured. (Tr. 416-28). Ruth Rodriguez began this action by Complaint (Doc. 1) filed on January 19, 2024, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 1).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009. (Tr. 419). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of April 16, 2008, through his date last insured. (Tr. 419). At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "disorders of the spine." (Tr. 419). At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 420-21).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except no more than occasional stooping and crouching.

(Tr. 421).

At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. (Tr. 426). At step five, the ALJ found

that considering Plaintiff's age (49 years old on the date last insured), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 426-27). Specifically, the vocational expert testified that a person with Plaintiff's limitations could have performed such occupations as:

    (1)   Office Helper, DOT[2] 239.567-010, light, unskilled, SVP 2

    (2)   Paper Inserter, DOT 920.687-138, light, unskilled, SVP 2

    (3)   Parking Lot Attendant, DOT 915.473-010, light, unskilled, SVP 2

(Tr. 427). The ALJ concluded that Plaintiff was not under a disability from April 16, 2008, the alleged onset date, through December 31, 2009, the date last insured. (Tr. 427).

## II.   Analysis

On appeal, Ruth Rodriguez raises two issues:

(1)   The ALJ failed to follow the terms of the remand order; and

(2)   The ALJ erred at step two of the sequential evaluation by failing to find Plaintiff's mental impairments severe.

(Doc. 14, p. 4, 8).

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

### A.   Order on Remand

Ruth Rodriguez contends that the ALJ failed to follow the order of the District Court that reversed ALJ Hart's prior decision and remanded the action to the Commissioner for further proceedings. (Doc. 14, p. 4). She claims that the remand order required the ALJ to consider prior MRI evidence in the decision, but the ALJ failed to comply with the Order. (Doc. 14, p. 4, 5).

For cases with a remand order, the reviewing court examines de novo whether the ALJ has complied with such order. *Maxwell v. Comm'r of Soc. Sec.*, 778 F. App'x 800, 802 (11th Cir. 2019) (citing *Sullivan v. Hudson*, 490 U.S. 877, 885-86 (1989); *see also Apone v. Comm'r, Soc. Sec. Admin.*, 435 F. App'x 864, 865 (11th Cir. 2011). Courts are precluded from revisiting issues already decided. *Id.* (citations omitted). "The mandate rule is nothing more than a specific application of the law of the case doctrine, one that requires strict compliance with the appellate mandate. *Id*. (internal quotation marks omitted). A lower court is tasked with implementing both the letter and spirit of the mandate, "'taking into account the appellate court's opinion and the circumstances it embraces.'" *Id.* (citations omitted). If the ALJ fails to follow a specific action mandated by the Appeal Council on remand, this failure constitutes reversible error "because it obviates an ALJ's duty to fully and fairly develop the record. *Ross v. Comm'r of Soc. Sec.*, No. 6:12-cv-959-ORL-22GJ, 2013 WL 5236680, at *3 (M.D. Fla. Sept. 17, 2013). "A court 'may not alter, amend, or

examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate.'" *Apone*, 435 F. App'x at 865.

In the January 4, 2022 Opinion and Order, the Magistrate Judge reversed the decision and remanded the action, ordering on remand that the Commissioner must:

> (1) Consider Dr. .Rangan[a]than's treatment notes and opinions, specifying the weight afforded and the reasons thereto; (2) consider the diagnostic imaging evidence; and (3) re-evaluate all the evidence of record.

(Tr. 500). Earlier in the Opinion and Order, the Court specified that the ALJ failed to discuss Dr. Ranganathan's December 26, 2006 treatment notes, and the MRIs taken in 2004, 2012, and 2015. (Tr. 497). The Appeals Council then vacated the prior decision and remanding the case to an administrative law judge "for further proceedings consistent with the order of the court." (Tr. 468).

At the outset of the most recent decision, the ALJ acknowledged the terms of the remand order and included this summary:

> The U.S. District Court for the Middle District of Florida (Civil Action Number 6:20-cv-01368-MRM) has remanded this case to the Commissioner of Social Security for further administrative proceedings in accordance with the fourth sentence of section 205(g) of the Social Security Act. Specifically, the Court remanded because the previous Administrative Law Judge failed to discuss Dr. Ranganathan's opinions or afford them a specific weight and failed to discuss the MRI evidence, referring to MRI's taken in 2004, 2012, and 2015.

(Tr. 416). The ALJ also added this explanation: "[a]t the hearing, the claimant's representative acknowledged that the record does not contain an MRI from 2004,

and although she alleged that it was mentioned in the record, she was unable to provide a citation to this mention." (Tr. 416).

Ms. Rodriguez contends that the ALJ failed to fully discuss the 2004 MRI that showed abnormal results. (Doc. 14, p. 6-7). Ms. Rodriguez further claims that the failure to discuss this MRI is not harmless error because the MRI results displayed abnormal findings and support additional limitations in the RFC. (Doc. 14, p. 7-8).

The ALJ recognized that the remand order required her to consider Dr. Ranganathan's opinion and review MRIs from 2004, 2012, and 2015. (Tr. 416). As to Dr. Ranganathan, the ALJ confirmed with Ms. Rodriguez's representative at the hearing that Dr. Ranganathan was not a treating physician, but consultative examiner. (Tr. 441). As a result, Dr. Ranganathan had no treating notes for the ALJ to review.

The ALJ also noted that the MRI from 2004 was not in the record and asked Ms. Rodriguez's representative for a copy of it. (Tr. 416). Ms. Rodriguez's representative stated she did not have a copy of it, but stated it was mentioned in one of the records, which she could not locate. (Tr. 443). At the end of the hearing, the ALJ allowed Ms. Rodriguez's representative an additional 30 days to obtain the 2004 MRI as well as other evidence, and put them in the record. (Tr. 454). In the brief, Ms. Rodriguez's counsel did not cite the 2004 MRI, so apparently it was not in the record for the ALJ or this Court to review.

Ms. Rodriguez argues that the ALJ erred in finding that a 2004 MRI was not in the file, "as this MRI would have been in the file as it is actually the MRI referenced by Dr. Sam Ranganathan in December 2006. Tr. 235." (Doc. 14, p. 6). She explains that when Dr. Ranganathan performed a consultative examination in December 2006, "they [possibly the Commissioner] had access to all of Plaintiff's prior medical records," including the March 2004 and a February 1, 2006 MRI. (Doc. 14, p. 6). But apparently it is not in the record. Thus, to comply with the remand order, the ALJ properly reviewed Dr. Ranganathan's findings about the 2004 MRI as shown below. (Tr. 422).

On December 26, 2006, Sam Ranganathan, M.D. conducted a consultative physical exam of Plaintiff. (Tr. 235-37). He reviewed MRIs from March 2004 and February 2006, finding small disc protrusions and bulging discs in various areas. (Tr. 235). In the decision, the ALJ summarized Dr. Ranganathan's consultative examination findings:

> In December 2006, the claimant underwent two independent consultative examinations, the first of which was a physical exam performed by Dr. Ranganathan. Records note the prior diagnosis of: anxiety; left carpal tunnel syndrome with normal EMG findings; as well as cervical, thoracic and lumbar disc bulges and protrusions noted during prior MRI scans. Upon testing the claimant exhibited normal findings (i.e. normal vision with corrected lenses, full strength throughout, intact sensation, preserved fine and gross manipulation, walked without assistance, negative straight leg raises, able to get on and off the exam table and chairs, etc.), other than presenting as somewhat anxious, wirg [sic] reports of some mild thoracic tenderness, and slightly reduced lumbar flexion. Imaging taken

> of his lumbosacral spine showed sclerosis of the articular margins of the S1 and facet arthropathy of the L3-4 and L4-5, but no fracture, dislocation, or spondylolisthesis. Dr. Ranganathan's only diagnoses were degenerative disease of the dorsal spine and history of depression (Exhibit B2F)

(Tr. 422).

The ALJ thoroughly considered Dr. Ranganathan's opinion as well as the summary of the MRI results he relied on to form his opinion. (Tr. 422). Further, the ALJ properly noted the generally normal examination results. (Tr. 235-37, 422). In the decision, ALJ also considered MRIs from 2012 and 2015. (Tr. 423-24). In the 2015 MRI results, the radiologist compared these results with the results of the 2012 MRI and also with a 2011 MRI. (Tr. 347-53, 423-24). The remand order required the ALJ to consider Dr. Ranganathan's opinions and consider the diagnostic imaging. (Tr. 500). The ALJ complied with the remand orders from both the District Court and the Appeals Council, and there is no error.

### B. Step Two Severe Impairments

Ms. Rodriguez argues that the ALJ erred at step two of the sequential evaluation for failing to find any mental impairments severe. (Doc. 14, p. 8). Ms. Rodriguez claims that there is evidence that Plaintiff's mental impairments caused more than a minimal effect on his ability to work. (Doc. 14, p. 8).

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of

impairments is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities" 20 C.F.R. §§ 404.1522(a), 416.922(a). In other words, a severe impairment is an impairment or combination thereof that *significantly* limits a claimant's abilities to perform basic work activities. *See* SSR 85-28, 1985 WL 56856, *4 n.1; 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).

The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The impairment must also last or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. The claimant bears the burden at step two of proving that she has a severe impairment or combination of impairments. *O'Bier v. Comm'r of Soc. Sec. Admin.*, 338 F. App'x 796, 798 (11th Cir. 2009).

This inquiry "acts as a filter in that the finding of any severe impairment ... is enough to satisfy the requirement of step two and allow the ALJ to proceed to step three." *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) (internal quotations omitted). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination

of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted).

With this standard in mind, even if the ALJ should have characterized Plaintiff's mental impairments as severe, any error is harmless because the ALJ characterized other impairments – disorders of the spine – as severe. (Tr. 419). The ALJ then advanced to step three of the sequential evaluation. *See Ball*, 714 F. App'x at 993. With step two satisfied, the issue then becomes whether the ALJ considered all of Plaintiff's impairments in assessing the RFC. She did.

The ALJ found Plaintiff had a history of depression and anxiety, but found these impairments were not severe and did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. (Tr. 419). In the four broad functional areas, the ALJ found Plaintiff had mild limitations in understanding, remembering or applying information, mild limitations in interacting with others, mild limitations in concentrating, persisting, or maintaining pace, and no limitations in adapting or managing oneself. (Tr 419-20). In assessing Plaintiff's RFC, the ALJ discussed psychological evaluations by Elizabeth Van Horn, Psy.D.

and Rosimeri Clements, Psy.D. and State agency psychological consultants. (Tr. 422, 426). Drs. Van Horn and Clements found that Plaintiff's primary problems were medical and Plaintiff denied he was experiencing any emotional problems that were impairing his ability to function. (Tr. 240).

Ms. Rodriguez cites a Treating Source Mental Health Report from Zahra Promes, M.D. that Plaintiff had poor concentration, was anxious, and was easily agitated. (Doc. 14, p. 11; Tr. 234). The ALJ considered Dr. Promes statements, and gave her statement that Plaintiff was likely unable to sustain work activity on a regular basis no significant weight. (Tr. 422). Ms. Rodriguez also argues that Plaintiff would have been more limited in the area of getting along with supervisors or coworkers than found in the RFC. (Doc. 14, p. 11). Plaintiff cites Dr. Van Horn's note that Plaintiff became angry and divisive, Dr. Promes's note that Plaintiff was anxious and easily agitated, and Dr. Ranganathan's note that Plaintiff was somewhat anxious on examination. (Doc. 14, p. 11-12). Plaintiff argues that overall, these findings support greater limitations in the RFC. (Doc. 14, p. 12).

The ALJ thoroughly considered all these notes and findings in the decision. (Tr. 422-23). In essence, Plaintiff invites the Court to reweigh the evidence, which it cannot do. A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). "The ALJ need not refer to every piece

of evidence in his decision, so long as a reviewing court can conclude that the ALJ considered the claimant's medical condition as a whole." *Id.* Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Taking the record and the decision as a whole, substantial evidence supports the ALJ's assessment of Plaintiff's mental impairments and the RFC assessment. The ALJ did not err.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on November 4, 2024.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties